FILED
JAMES J. WALDRON, CLERK

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

MAR 2 3 2012

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY _____ DEPUTY

Chapter 7

In Re:

**JAMES M. GRAMMENOS,**

          **Debtor.**

Case No.: 09-18548(RG)

---

**AMERICO SPIRIDIGLIOZZI,**

          **Plaintiff,**

vs.

**JAMES GRAMMENOS,**

          **Debtor/Defendant.**

Adv. No.: 09-2777(RG)

**OPINION**

**APPEARANCES:**

Karen E. Bezner, Esq.
567 Park Avenue, Suite 103
Scotch Plains, NJ 07076
*Attorney for the Plaintiff, Americo Spiridigliozzi*

James M. Grammenos
1110 Wyoming Drive
Mountainside, NJ 07092
*Debtor-Defendant, Pro Se*

**HONORABLE ROSEMARY GAMBARDELLA, BANKRUPTCY JUDGE**

## MATTER BEFORE THE COURT

Before the Court is a Motion for Summary Judgment filed by Plaintiff Americo Spiridigliozzi, pursuant to Federal Rule of Civil Procedure 56, as made applicable by Federal Rule of Bankruptcy Procedure 7056, in an adversary proceeding seeking to deny the chapter 7 discharge of Debtor James M. Grammenos pursuant to 11 U.S.C. § 727(a)(2), (a)(3), and (a)(5).

Hearings were held on August 10, 2011, and November 29, 2011. This Court reserved decision. The following constitutes the Court's findings of fact and conclusions of law.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### I. Background

James M. Grammenos ("Debtor") filed a voluntary petition under for relief under chapter 7 of the Bankruptcy Code on April 6, 2009 ("Petition Date"). Pet., *In re Grammenos*, No. 09-18548 (Bankr. D.N.J. Apr. 6, 2009), ECF No. 1; Adv. Compl., ECF No. 1.

On April 7, 2009, Charles A. Stanziale was appointed Trustee, No. 09-18548, ECF No. 3, and on June 9, 2009, the Trustee filed a Report of No Distribution. On September 21, 2009, the Trustee filed a letter with this Court withdrawing the Report of No Distribution, stating that it had come to his attention that Debtor held an "interest in a sizeable asset that will more than likely yield a distribution to creditors." No. 09-18548, ECF No. 16. Debtor was formerly represented by counsel Michael Schwartzberg, Esq. in the filing of his chapter 7 case, but is currently representing himself *pro se* in the Adversary Proceeding.[1]

Plaintiff here is a judgment creditor of Debtor, alleging a debt owed with a balance of approximately $37,000.00, consisting of damages from a willful breach of a contract for the sale

---

[1] In Debtor's Motion to Set Aside the Default, Debtor states that he last met with an attorney on January 7, 2010.

of real estate.[2] A case against Debtor was heard in New Jersey Superior Court and is captioned

*Spiridigliozzi et al. v. Grammenos*, UNN-L-2302-07. The case is listed on Debtor's statement of

financial affairs, Pet. at 23,[3] and Schedule F of the Petition lists an unsecured nonpriority claim

of $42,000.00 owed to Americo and Karen Spiridigliozzi and total scheduled unsecured claims

of $68,655.00, Pet. at 15-16.

### 1.  *The Instant Adversary Complaint*

On November 13, 2009, Plaintiff Americo Spiridigliozzi filed an Adversary Complaint

seeking to deny Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2), (a)(3), and (a)(5).  By the

Complaint, Plaintiff alleges that Defendant engaged in certain fraudulent conduct and failed to

produce certain required records and documents.  Specifically, Plaintiff alleged that on or about

May 30, 2006, Debtor represented, in a mortgage application made to the Bank of America, that

he owned liquid assets in the form of bank accounts in the form of certificates of deposit and a

2005 Chevrolet Corvette, having a total value of $568,505.00. Plaintiff alleged that the vast

amount of the proceeds from a personal injury recovery remain unaccounted for, that the

Corvette—valued at $50,000.00—was purchased by Debtor with those proceeds and titled in his

father's name was traded in for an Infiniti—valued at $70,000.00 and also titled in his father's

name, and that the Infiniti was not included in Debtor's bankruptcy schedules. These acts,

Plaintiff urges, establish that Debtor transferred, removed, destroyed, mutilated, or concealed,

with intent to hinder, delay, or defraud a creditor or the Trustee, property of the estate within one

year of the Petition Date, in violation of § 727(a)(2)(A) and (B).

---

[2] At the August 10, 2011 hearing, counsel for the Plaintiff stated that the subject judgment was approximately
$60,000.00.
[3] In the Petition, the case ID number has a typographic error which has been fixed above.

Plaintiff further alleges that within one year of the Petition date, Debtor fraudulently transferred property of the estate and Debtor failed to provide documentation to account for the vast majority of his pre-petition assets and explain the loss of his assets, in violation of § 727(a)(3) and (a)(5).

On November 16, 2009, the Clerk of the Bankruptcy Court issued a summons directed to Debtor. Accordingly, the time within which Debtor was required to file an Answer or otherwise respond to the Complaint was December 16, 2009. On December 17, 2009, Plaintiff filed a request to enter default against Debtor, asserting that Debtor failed to file an answer or otherwise respond to the Complaint. On January 4, 2010, the Clerk of the Court entered default against Debtor.

On January 8, 2010, Debtor filed an Answer to the Complaint. By his Answer, Debtor asserts he purchased the vehicle, a 2005 Corvette, in 2004 with the use of a line of credit, several years prior to filing the bankruptcy petition, and he gifted the vehicle to his father at that time. Debtor asserts the original vehicle was traded in for a different vehicle of equivalent value, an Infiniti, which Debtor describes as an "even trade off estimated value of $30,000," and that title to the new vehicle remained in his father's name. Also, Debtor asserts delays in providing financial records were the result of Bank of America's failure to cooperate in providing him with the requested records and that he had at the time of the Answer already provided certain records to Plaintiff's counsel. Moreover, Debtor asserts in his Answer he is not concealing any assets, and credit card records demonstrate that over $370,000.00 was spent from May 2006 to the date when the account was closed.

After receiving notice delivered by the Clerk of Court that he was required to sign his Answer, on February 2, 2010, Debtor re-filed his signed Answer, and on March 12, 2010, Debtor

4

filed a Motion to Set Aside Default Judgment, by which he sought to set aside the entry of

default. On March 19, 2010, the Court held a status conference and entered a scheduling order

establishing deadlines for the submission of arguments and a hearing date. On March 24, 2009,

Plaintiff filed opposition to the Motion to Set Aside Default, asserting therein that Debtor

received the service of summons and that Debtor does not have a meritorious defense to the

Complaint, but rather that Debtor's Answer states Debtor spent over $370,000.00 from and after

May 2006, gifted his father a $30,000 car, and on May 30, 2006 had in his possession cash in the

form of certificates of deposit totaling $598,505.00, so cannot account for some $168,505.

On April 12, 2010, this Court entered an Order vacating the Default.

2. *The Motion for Summary Judgment*

On August 31, 2010, Plaintiff filed a Motion for Summary Judgment ("Summary

Judgment Motion"). ECF No. 20. Plaintiff argues that this Court should grant summary

judgment because Plaintiff has established Debtor made financial transactions without

explanation of business activity or source of funds and without providing information about the

disposition of other funds sufficient to rise to the level of "a genuine issue of material fact,"

sufficient to defend against summary judgment.

The Summary Judgment Motion argues that Debtor failed to produce recorded

information from which his financial condition or business might be determined within the

meaning of 11 U.S.C. § 727(a)(3). Plaintiff relies on *Meridian Bank v. Alten*, 958 F.2d 1226 (3d

Cir. 1992), in which the Third Circuit held that a debtor must provide reasons to "sufficiently

identify the transactions so that an intelligent inquiry can be made of them," and to provide

evidence "from which the present financial condition of the [debtor] and his business

transactions for the reasonable past may be ascertained." 958 F.2d at 1230. Plaintiff argues that

Debtor's failure to account for $291,534.61 of deposits between 2006 and 2009 and a $220,000.00 withdrawal in 2007 makes it impossible to ascertain Debtor's true financial condition, and thus, under *Meridan Bank*, discharge must be denied pursuant to § 727(a)(3). Pl.'s Mem. of Law 6-7, ECF No. 20-3.

The Motion further argues that Debtor failed to explain the loss of his assets—or the deficiency of his assets to meet his liabilities—within the meaning of 11 U.S.C. § 727(a)(5). In making that argument, Plaintiff relies on *Riehm v. Park (In re Park)*, 272 B.R. 323 (Bankr. D.N.J. 2001) (Wizmur, J.), and the test set forth therein, which states:

1. Plaintiff bears the burden of showing "that the Debtor at one time had the assets, but [that] they are no longer available for the creditors," *id.* at 332;

2. Plaintiff must "produce some evidence of the disappearance of substantial assets or of an unusual transaction which disposed of assets," *id.*;

3. Denial of discharge under § 727(a)(5) does not require that the debtor acted fraudulently or intentionally; and

4. Once a *prima facie* case is made, the burden shifts to the debtor to explain the loss or deficiency.

*Id.*[4] Plaintiff alleges Debtor's "squandering" of at least $525,000.00 in purchases from 2006 to 2009 and his failure to account for the receipt of $291,000.00 in additional monies during that time meets the statutory standard, and discharge must be denied pursuant to § 727(a)(5).

Plaintiff does note that claims under § 727 are to be construed liberally in favor of the debtor, under *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993), but asserts in conclusion that

---

[4] The Plaintiff cites several cases from other Circuits for their holdings that vague estimates of assets uncorroborated by documentation are insufficient and that the debtor must explain puzzling or suspect transactions without stonewalling creditors, including: *In re Chalik*, 748 F.2d 616, 619 (11th Cir. 1984); *In re Martin*, 698 F.2d 883, 888 (7th Cir. 1983); *In re Reed*, 700 F.2d 986, 993 (5th Cir. 1983); and *Baum v. Earl Millikin, Inc.*, 359 F.2d 811, 814 (7th Cir. 1966).

Plaintiff's pleadings have shown Debtor's failure to provide any explanation or information regarding his disputed transactions, and therefore Debtor now has the burden of providing such explanation or information. Pl.'s Mem. at 11-13.

On August 10, 2011, this Court held a hearing at which Debtor represented to the Court that he had an explanation of the purchases sufficient to answer Plaintiff's questions. Specifically, Debtor stated that on August 29, 2007, he withdrew $220,000 in cash from his Bank of America Money Market Savings Account #3486, kept the cash in his home and made payments on his credit card bills by making deposits at a local Bank of America branch near his home. On August 16, 2011, the Court entered a corresponding Order Confirming Dates for Submission of Supplementary Materials.

On August 17, 2011, Debtor, through Plaintiff's counsel, submitted the list of expenses as detailed at the August 10, 2011 hearing along with supporting documentation. The list of expenses showed a total amount of $229,413.10 spent between August 2007 and August 2009, including (1) money market savings account spending between August 2007 and August 2009 of $2,292.00; (2) monthly credit card statements between August 2007 and August 2009 totaling $190,642.69; (3) a car purchased in February 2008 for $20,000 at delivery; and (4) "other receipts"—clarified at the November 29, 2011 hearing as monies "spent"— from 2007-2008 totaling $16,478.41. Bezner Cert., Aug. 17, 2011, ECF No. 26. On August 22, 2011, Debtor filed an Affidavit, claiming he could account for 85% of the funds by his withdrawal of funds from his Bank of America accounts and subsequent use of the cash for expenses and to make payments to his Bank of America credit card. Grammenos Aff., Aug. 22, 2011, ECF No. 31.

Plaintiff filed a Response to Debtor's Affidavit and exhibits, identifying several alleged contradictions between the Affidavit and Debtor's statements at the August 10, 2011 hearing.

7

Further, Plaintiff points to the lack of corroborating documentation for the withdrawal of funds

from Bank of America, as well as a lack of evidence to support Debtor's claim to have used cash

to pay his bills. Plaintiff asserts that the contradictions, lack of corroborating evidence, and the

remaining unexplained funds and bank accounts warrant summary judgment for Plaintiff. Pl.'s

Resp., Sept. 14, 2011, ECF No. 33.

On November 29, 2011, this Court resumed the hearing on Plaintiff's Motion for

Summary Judgment. Plaintiff set forth his arguments from the Summary Judgment Motion and

Response, and Debtor elaborated on his explanation of his financial habits, as contained in his

Affidavit. In addition, Debtor presented to the Court statements for his Visa Platinum Cards for

the statement periods between April 19, 2006 and June 29, 2009, at which time the entire balance

of $23,956.72 (above the credit line limit of $23,000) was charged off by Bank of America. *See*

Debtor's Ex. D1 (the charges end in February 2009, at which point the account is simply

identified as "overdrawn").

### Debtor's Assets

*1.  Assets Listed in the Petition*

In Debtor's Chapter 7 petition, he lists the following sums as his sole assets:

| Asset | Value |
|---|---|
| Checking Account: | $500.00 |
| Household Goods: | $2,500.00 |
| Used Clothing: | $750.00 |
| 2008 BMW | $15,000.00, but subject to lien of $18,000.00 (so net value = $0.00) |
| 2006 Honda Motorcycle: | $4,000.00 |
| 2008 Income Tax Refund | $1.00 |
| **Total:** | **$7,751.00** |

Pl.'s Mem. at 2, 13; Pet. at 9-13.

8

2. _Tax Returns_

Debtor's federal tax returns for the year 2006 to 2008, obtained by Plaintiff through discovery, report the following income:

| 2006 | $16,599.00 (consisting entirely of interest on a CD) |
|------|------------------------------------------------------|
| 2007 | $9,407.89 |
| 2008 | $0.00 |

Pl.'s Mem. at 2; Bezner Cert. ex. C, Aug. 31, 2011, ECF No. 20-7.

3. _The Alleged Personal Injury Settlement_

According to Plaintiff, in or about 2006, Debtor recovered a substantial sum of money from the settlement of a personal injury case. Pl.'s Mem. at 2. Plaintiff has not alleged a specific amount recovered.

The supplemental documentation filed by Debtor through Karen E. Bezner, Esq., counsel for Plaintiff, in the statement for Bank of America Money Market Savings Account #3486, shows a beginning balance on April 13, 2006 of $647.19, a deposit of more than $100,000.00 on May 3, 2006, and an ending balance as of May 12, 2006 of $192,170.93. Debtor has not explicitly stated the origin of the money.

4. _Bank Accounts Listed in the 2006 Mortgage Loan Application_

On or about May 30, 2006, Debtor submitted a Uniform Residential Mortgage Loan Application to Bank of America allegedly listing assets from the personal injury settlement along with other assets. Compl. at 2; Summ. J. Mot. at 2; _see also_ Bezner Cert. ex. B, ECF No. 20-6.

The application lists five bank accounts with Bank of America—four Certificates of Deposit and one Money Market Savings Account—which Plaintiff asserts had a total value of $518,503.00 as of June 9, 2006:

| Account | Funds as of 6/9/2006 |
|---|---|
| CD # 1560 | $36,274.00 |
| CD # 1579 | $109.230.00 |
| CD # 1587 | $116,266.00 |
| CD # 6974 | $76,732.00 |
| Money Market Savings # 3486 | $180,001.00 |
| Total: | $518,503.00 |

Compl. at 2; Pl.'s Mem. ¶ 5. Debtor has not disputed these figures, but did submit the letter of declination in response to his application for a loan from Bank of America that he received on June 7, 2006. The reason for the declination was given as "Insufficient Net Income."

## 5. *Credit Card Charges*

Plaintiff asserts Debtor engaged in a "wild spending spree" from 2006 to 2009, incurring charges on three Bank of America credit cards with consecutive active periods totaling $525,752.78. Plaintiff alleges all of these charges were paid in full prior to the filing of Debtor's Chapter 7 Petition. A review of Debtor's credit card statement shows Debtor maintained a fairly low average balance, paying off the majority of the charges each statement period. Additionally, there were only just over $23,000 in charges on account number 8762 that were not paid before the petition date. This sum was charged off by Bank of America in June 2009.

These charges, as compiled by Plaintiff, were as follows:

| Account # | Charges | Time Period |
|-----------|---------|-------------|
| 8150 | $245,439.61 | 1/18/2006 – 12/2007 |
| 3363 | $215,038.99 | 2/2007 – 8/2008 |
| 8762 | $65,274.18 | 8/2008 – 3/2009 |
| **TOTAL** | **$525,752.78** | |

Pl.'s Mem. at 2; *see also* Bezner Cert. exs. F-H, Aug. 31, 2011, ECF No. 21, 21-1 to -4, 22, 22-1 to -3.

Debtor's Answer stated he had charged over $370,000 from May 2006 to the time he filed his Answer or the time "when account was closed." Ans., ECF No. 7. The account was not closed voluntarily, but was charged off by Bank of America.

A. *Assets in Dispute*

1. *The Corvette Trade-In*

Debtor's May 30, 2006 mortgage loan application lists among his assets a 2005 Chevrolet valued at $50,000.00. Bezner Cert ex. B. As discussed above, Debtor states in his Answer he had purchased the car—a Corvette—as a gift to his father in 2004 using a line of credit and later traded in the car for an Infiniti valued at $30,000. Debtor asserts that at the time of the trade, the Corvette was worth $30,000, so it was an "even trade off." Ans. ¶ 1.

Plaintiff disputes this, noting in the Summary Judgment Motion the Complaint's allegations that Debtor in a September 2, 2009 deposition testified the Infiniti was worth $70,000. Compl. ¶ 6; Pl.'s Mem. at 3. Plaintiff also alleges in the Complaint and Summary Judgment Motion that Debtor had purchased the car in 2005 with proceeds from the personal injury settlement, rather than, as Debtor alleges, from a line of credit in 2004. Compl. ¶ 6; Pl.'s Mem. at 3.

11

Debtor's supplementary filings show the car was purchased on September 18, 2004, in the name of George Grammenos, residing at the same address as Debtor, 1110 Wyoming Drive, Mountainside, New Jersey. Bezner Supp. Cert. ex. at 2, Aug. 17, 2011, ECF No. 26-2.

### 2.  *The Bank Account Transactions*

#### a.  The Unexplained Deposits

Plaintiff asserts Debtor's financial records, obtained through discovery, show Debtor obtained a total of $291,534.61 in funds from "outside sources" between 2006 and 2009, the origin of which has not been explained. Pl.'s Mem. at 5.

Specifically, Plaintiff asserts that from September 18, 2006 to December 30, 2008, Debtor deposited a total of $205,629.38 from unidentified sources into Money Market Savings Account # 3486 in the form of "counter credits;" and that between April 19, 2006 and July 9, 2009, Debtor deposited $85,905.23 from outside sources into checking account # 9022, for total deposits of $291,534.61. *Id.* at 4; *see also* Bezner Cert. exs. D, E, ECF Nos. 21, 21-1 to -3. In account statements from Bank of America, these deposits are described as "counter credits," "paypal," "ATM," or "wire transfers" from "L. Wayne Clemens, Jr." or "Mircv 15133 NY." Pl.'s Mem. at 4; *see also* Bezner Cert. exs. D, E, I, ECF Nos. 21, 21-1 to -3, 20-8.

#### b.  The Unexplained Withdrawal

Plaintiff alleges that on August 29, 2007, Debtor withdrew $220,000.00 in cash from account # 3486 and that there is no evidence that these funds were posted to any other account. Plaintiff asserts Debtor has not satisfactorily explained the disposition of these funds. Pl.'s Mem. at 4; *see* Bezner Cert. ex. D1 at 5, ECF No. 21 (Plaintiff's summary of transactions for account # 3486); Bezner Cert. ex. D2 at 6, ECF No. 21-1 (Bank of America account statement showing transactions for account # 3486); Bezner Cert. ex. J, ECF No. 20-9 (reprinting page 6 of

12

Ex. D2, above); *see also* Bezner Cert. ex. E1 at 2, ECF No. 21-2 (Plaintiff's summary of transactions for account # 9022); Bezner Cert. ex E2 at 5, ECF No. 21-3 (Bank of America account statement showing transactions for account # 9022).

## ANALYSIS AND OPINION OF LAW

### *Standard for Summary Judgment*

Federal Rule of Civil Procedure 56(a), made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that a court shall "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. [5]

The U.S. Supreme Court has defined an "issue of material fact" as a question which must be answered in order to determine the rights of the parties under substantive law and which can only properly be resolved "by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986); *see also Justofin v. Metropolitan Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004) ("A fact is material when its resolution 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'") (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Knauss v. Dwek*, 289 F. Supp. 2d 546, 549 (D.N.J. 2003) (Cooper, J.). The burden then shifts to the nonmoving party,

---

[5] The quoted language is taken from the 2010 revision of Rule 56(a), which replaces the previous Rule 56(c). Notably, it replaces "genuine issue of material fact" with "genuine dispute as to any material fact." The cited cases all predate this new Code change and therefore use the older terminology.

who must present evidence establishing a genuine issue of material fact exists, making it necessary to resolve the difference at trial. *Id.* The nonmoving party must "make a showing sufficient to establish the existence of every element essential to the party's case, and on which that party will bear the burden of proof at trial." *Cardenas v. Massey*, 269 F.3d 251, 254-55 (3d Cir. 2001).

Inferences and facts should be construed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Sempier v. Johnson & Higgins*, 45 F.3d 724, 727 (3d Cir. 1995). However, parties opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The non-movant may not rely on mere allegations but must present actual evidence raising a genuine issue of material fact. *Anderson, supra*, 477 U.S. at 249. In addition, a motion for summary judgment will not be defeated by "the mere existence" of some disputed facts. *Am. Eagle Outfitters v. Lyle & Scott, Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). "If the evidence (offered by the nonmoving party) is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citation omitted). Only disputes over those facts "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Dehart v. Horn*, 390 F.3d 262, 267 (3d Cir. 2004).

Summary judgment may be proper even though some material facts remain disputed if, after all inferences are drawn in favor of the non-moving party, the moving party is entitled to judgment as a matter of law. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 804 (1999). "[T]he inquiry involved in a ruling on a motion for summary judgment . . . necessarily implicates

14

the substantive evidentiary standard of proof that would apply at the trial on the merits."
*Anderson*, 477 U.S. at 252.

The Third Circuit Court of Appeals has held the purpose of summary judgment is to avoid an unnecessary trial which results in delay and expense. *Tomalewski v. State Farm Life Ins. Co.*, 494 F.2d 882, 884 (3d Cir. 1974). However, summary judgment is considered a "drastic remedy" which is not to be granted liberally. *Id.* The Third Circuit has stated that "where there is the slightest doubt as to the facts," summary judgment may not be granted. *Id.*; *see also Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir. 1981). At the summary judgment stage, therefore, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial." *Knauss, supra*, 289 F. Supp. 2d at 549 (citing *Anderson*, 477 U.S. at 249).

### General Standard for Denials of Discharge under 11 U.S.C. § 727

"A discharge under § 727 of the Bankruptcy Code is the primary tool used to afford debtors a fresh start. Congress has described the discharge as the 'heart' of bankruptcy law's fresh start provisions." *BMMD v. Vasquez (In re Vasquez)*, 2010 WL 1644175 at *2 (Bankr. D.N.J. April 21, 2010) (Steckroth, J.) (citing *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993) and H.R. Rep. No. 595, 95th Cong. 1st Sess. 384 (1977)). "Courts will deny a discharge only in extreme circumstances." *Id.* (citing *Ins. Co. of N. Am. v. Cohn (In re Cohn)*, 54 F.3d 1108, 1113 (3d Cir.1995)); *see also Stapleton v. Yanni (In re Yanni)*, 354 B.R. 708, 711 (Bankr. E.D. Pa. 2006) (stating that a denial of discharge is "by far the most severe penalty a Chapter 7 debtor can receive in the life of a bankruptcy case"). Furthermore, Federal Rule of Bankruptcy Procedure 4005 provides that "[a]t the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection." Fed. R. Bankr. P. 4005.

15

However, the Supreme Court has stated the Bankruptcy Code is meant to discharge only the honest but unfortunate debtor. *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991). "Accordingly, to receive a discharge, debtors must provide an accurate picture of their pre-petition financial affairs." *In re Vasquez, supra,* 2010 WL 1644175 at *2 (citing *K & K Co., Inc. v. Conde (In re Conde)*, 386 B.R. 577, 582 (Bankr. W.D. Pa. 2008)).

### Count I: Section 727(a)(2)(A) and (B)

Count One of Plaintiff's Adversary Complaint states a claim for denial of discharge under 11 U.S.C. § 727(a)(2), which provides as follows:

> The court shall grant the debtor a discharge, unless—
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>
> > (A) property of the debtor, within one year before the date of the filing of the petition; or
>
> > (B) property of the estate, after the date of the filing of the petition.

§ 727(a)(2).

The Court of Appeals for the Third Circuit has held parties seeking to deny a debtor's discharge under this provision must prove two key elements by a preponderance of the evidence: "an act (i.e. a transfer or a concealment of property) and an improper intent (i.e. a subjective intent to hinder, delay, or defraud a creditor)." *Rosen v. Bezner, supra*, 996 F.2d at 1531. Therefore, a plaintiff must show that the debtor "(1) transferred or concealed property; (2) belonging to him; (3) within one year of the bankruptcy filing or after the petition was filed; and (4) with intent to hinder, delay, or defraud a creditor." *Serio v. DiLoreto (In re DiLoreto)*, 266 F.

16

App'x 140, 144 (3d Cir. Jan. 29, 2008) (citing *In re Dawley*, 312 B.R. 765, 782 (Bankr. E.D. Pa.

2004)).

"The intent must be an actual intent and cannot be constructive." *Costa Transports, Inc.*

*v. Last (In re Last)*, 440 B.R. 642, 649 (Bankr. D.N.J. 2010) (Winfield, J.) (citing, *inter alia*,

*Bank of Pa. v. Adlman (In re Adlman)*, 541 F.2d 999, 1003 (2d Cir. 1976)).    Intent may be

established by circumstantial evidence or inferred from the debtor's conduct. *Id.* (citing *Scimeca*

*v. Umanoff*, 169 B.R. 536, 542-43 (D.N.J. 1993) (Lechner, J.).

Courts consider "badges of fraud" to be indicative of fraudulent intent in § 727(a)(2)

cases. These include:

> (1) a gratuitous transfer of valuable property or the transfer of property for
> inadequate consideration; (2) a close relationship between a transferor and
> transferee; (3) a transfer in anticipation of a pending lawsuit; (4) a
> transferor/debtor who was insolvent or in poor financial condition at the
> time of the transfer; (5) the transfer of all or substantially all of a debtor's
> property; (6) a transfer that so completely depletes the debtor's assets that
> the creditor was hindered or delayed in recovering any part of a judgment;
> and (7) the retention of possession, benefit, or use of the property in
> question even though title exists in another entity.

*In re Vasquez, supra*, 2010 WL 1644175, at *3 (citing *Holber v. Jacobs (In re Jacobs)*, 381 B.R.

147, 164 (Bankr. E.D. Pa. 2008); *In re Spitko*, 357 B.R. 272, 301 (Bankr. E.D. Pa. 2006).

The Third Circuit has adopted the "continuous concealment" doctrine for § 727(a)(2)(A)

claims, holding "a concealment will be found to exist during the year before bankruptcy even if

the initial act of concealment took place before this one year period[,] as long as the debtor

allowed the property to remain concealed into the critical year." *Rosen*, 996 F.2d at 1531.

However, the debtor must have retained some interest in the property during the time of

concealment. *Id.* at 1532.

1. The Corvette Trade-In

Here, Plaintiff has failed to meet his burden under *Rosen* of showing, for summary judgment purposes, both an act and an improper intent. First, although both parties agree the Corvette was in fact traded in for the Infiniti, there is a genuine dispute concerning the value of the Corvette at the time of the trade-in. If, as Debtor contends, the trade was an equal exchange, then no transfer took place which yielded value, thus failing the "act" requirement. Even though Debtor submitted the receipt for purchase of the Corvette, the Court has not yet seen similar documentation for the Infiniti. As this genuine dispute as to a material fact is unresolved, summary judgment cannot be granted. Likewise, Plaintiff has not alleged Debtor maintained a secret interest in the Infiniti or that he concealed an interest within the critical one-year period before the Petition Date. Further, the record is silent as to any such interest in the Infiniti, although the use of George Grammenos's name on the receipt for sale of the Corvette lends itself to an inference in support of Debtor's claim. Therefore, there is a genuine dispute as to the material fact of whether the Corvette's trade-in meets the time limits of § 727(a)(2). Second, as to the intent requirement, it is not clear on the facts that either Debtor's purchase of the Corvette in 2004, or its trade-in for the Infiniti in 2007, demonstrate any improper intent to defraud creditors. Debtor asserts his father owned the cars and the trade was conducted at his request. To the extent this contradicts Debtor's listing of the Corvette on his mortgage loan application, a genuine dispute exists over a material fact that cannot be resolved at the summary judgment stage. Summary judgment is denied on Count One as relates to the Corvette.

2.  The Unexplained Deposits and Withdrawals

Second, as relates to Debtor's unexplained deposits and withdrawals, the Court notes that
the key withdrawal took place on August 29, 2007, more than nineteen months before Debtor
filed his Petition. No evidence has been submitted concerning the identity of any transferee
receiving the funds or concerning any particular disposition of the $220,000.00 into the critical
one-year period before the Petition was filed. Since neither Plaintiff nor Debtor has provided
specific evidence indicative either of concealment or retention of the funds by Debtor, there
remains a genuine dispute of material fact as to whether the property meets the temporal
requirements of § 727(a)(2).

As to the intent requirement, without more information concerning the disposition of the
$220,000.00 and Debtor's spending, the Court notes Debtor has provided extensive
documentation in response to Plaintiff's discovery request as well as voluntarily to the Court at
both the August 10, 2011 and November 29, 2011 hearings, which may weigh against a finding
of deliberate intent to defraud creditors through concealment. The documents presented by
Debtor, and the vast amount charged to his credit card(s) between May 2006 and August 2009,
may lend support to Debtor's explanation that he put nearly all of his purchases on his credit card
and used funds from what had formerly been in his money market savings account(s) to pay off
the credit card charges. However, the documents presented, while generally helpful, do not
provide a clear explanation of how Debtor disposed of the $220,000.00. Debtor's intent
therefore remains in genuine dispute not fully developed in the factual record. Additionally,
Debtor, at the November 29, 2011 hearing, stated that he could not presently account further for
the funds deposited into accounts # 3486 and # 9022, totaling $205,629.38 and $85,905.23
respectively, except as to the records presented to date.

19

Construing the facts in the record in a light most favorable to the non-moving Debtor, the

Court finds the evidence insufficient at this time to support the entry of judgment, as matter of

law, denying discharge under § 727(a)(2).  Plaintiff's Motion for Summary Judgment is denied

as to Count One.

**Count II: Section 727(a)(3)**

Count Two of Plaintiff's Adversary Complaint states a claim for denial of discharge

under 11 U.S.C. § 727(a)(3).  This provision provides as follows:

> The court shall grant the debtor a discharge, unless—
>
> > (3) the debtor has concealed, destroyed, mutilated, falsified, or failed
> > to keep or preserve any recorded information, including books,
> > documents, records, and papers, from which the debtor's financial
> > condition or business transactions might be ascertained, unless such
> > act or failure to act was justified under all of the circumstances of the
> > case.

§ 727(a)(3).

To state a claim under this provision, the Third Circuit Court of Appeals has held a

plaintiff must demonstrate, by a preponderance of the evidence, (1) the debtor "concealed or

failed to maintain and preserve adequate records, and (2) this failure made it impossible to

ascertain his financial condition and material business transactions." *In re DiLoreto, supra*, 266

F. App'x at 145 (citing *Meridian Bank v. Alten, supra*, 958 F.2d at 1233).  The provision does

not contain an intent requirement.  "The only showing required . . . is that the debtor has

unjustifiably failed to keep records of his financial condition." *Meridian Bank*, 958 F.3d at 1234.

Once the plaintiff has demonstrated a failure to maintain records, the burden shifts to the

debtor, who must justify his failure to the court's satisfaction. *Id.* at 1233.

> [J]ustification depends largely on what a normal, reasonable person would
> do under similar circumstances. The inquiry should include the education,
> experience, and sophistication of the debtor; the volume of the debtor's

20

business; the complexity of the debtor's business; the amount of credit extended to debtor in his business; and any other circumstances that should be considered in the interest of justice.

*Id.* at 1231 (quoting *In re Wilson*, 33 B.R. 689, 692 (Bankr. M.D. Ga. 1983)).

When a debtor is unsophisticated or lacks experience in financial recordkeeping, courts have set a lower threshold for justification. *See Meridian Bank*, 958 F.3d at 1231 ("[o]bviously an unsophisticated wage earner dealing primarily in cash should not be denied a discharge because he failed to keep books of account. A higher standard of care is required, however, for a merchant actively engaged in credit transactions.") (citation omitted).

Courts in this district have also denied § 727(a)(3) claims when the factual record as to the sophistication of the debtor is too incomplete to allow an analysis under the *Meridian Bank* standard. *See Dipietro v. Drossel (In re Drossel)*, 2009 WL 3230794, at *6 (Bankr. D.N.J. Oct. 1, 2009) (Steckroth, J.) (finding for the debtor where both parties made assertions as to the sophistication of the debtor but failed to provide factual detail as to his sophistication or level of education, the complexity of his business structure or his volume of business, and holding "there are genuine issues of material fact as to the sophistication of the debtor and the justification prong of the section 727(a)(3) analysis. This must be determined at trial").

Here, Debtor has provided extensive documentation in response to Plaintiff's discovery request. However, the documents produced do not include the title to any of his automobiles, do not explain the origin of the $291,000.00 allegedly obtained from outside sources, and do not explain the disposition of those funds. Debtor stated in his Affidavit and supported in his statements at the Court's November 29, 2011 hearing that he had chosen to withdraw the $220,000.00 in cash from the money market account due to a dispute with Bank of America, and chose instead to hold the majority of his money in cash to pay his ongoing bills, including

21

charges on his credit card. His credit card statements, submitted as D1 during the hearing, support, to some extent, that explanation.

At the November 29, 2011 hearing, Debtor sought to explain that some of the $291,000.00 of deposits went just into his various accounts at Bank of America and then transferred to make on-line payments on his Bank of America credit cards. At another point in the hearing, Debtor stated that he could not presently account for these funds other than in the records he has produced to Plaintiff and the Court.

To determine whether the absence of these records is "justified" based on the Debtor's particular characteristics, the Court must assess what level of recordkeeping would be reasonable based on Debtor's sophistication, education, or type of business.

The record is silent as to these questions. As a result, this Court lacks sufficient basis to conduct an analysis under the *Meridian Bank* standard. In the absence of such an analysis, this Court, like the court in *In re Drossel*, cannot find for Plaintiff as a matter of law, as genuine disputes of material fact remain.[6] Construing the facts in a light most favorable to the non-moving Debtor, the Court must deny the motion for summary judgment as to Count Two.

### Count III: Section § 727(a)(5)

Count Three of the Adversary Complaint states a claim for denial of discharge under 11 U.S.C. § 727(a)(5), which provides as follows:

The court shall grant the debtor a discharge, unless—

> (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

11 U.S.C. § 727(a)(5).

---

[6] The Court also notes that Debtor's pleadings have been prepared without the assistance of counsel and are held to less stringent standards pursuant to the United States Supreme Court's holding in *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

Courts in this Circuit have held:

> [t]he global purpose of § 727(a)(5) is clear. A debtor must come into
> court and make full disclosure of his finances. He may not place the
> burden of "discovering" assets upon others. Section 727 makes complete
> financial disclosure a condition precedent to the privilege of discharge.

*Carter Eng'g Co. v. Carter (In re Carter)*, 236 B.R. 173, 180 (Bankr. E.D. Pa. 1999) (citations omitted).

In this district, courts have held that under § 727(a)(5), the creditor must first establish a loss or deficiency of assets; then the burden switches to the debtor to provide a satisfactory explanation." *Bezner v. Robbins (In re Robbins)*, 2008 WL 2038833 at *3 (Bankr. D.N.J. May 12, 2008) (Ferguson, J.) (citing *In re Cacioli*, 463 F.3d 229, 238-39 (2d Cir. 2006)). The plaintiff's initial burden is to specifically identify assets that are unaccounted for and to show the debtor at one time had the assets but they are no longer available for the debtor's creditors. *Riehm v. Park (In re Park)*, *supra*, 272 B.R. 323, 332 (Bankr. D.N.J. 2001) (Wizmur, J.) (citing *Ehle v. Brien (In re Brien)*, 208 B.R. 255, 258 (B.A.P. 1st Cir. 1997)). There is no requirement the plaintiff show the debtor acted fraudulently or intentionally. *Id.*

Whether the debtor has responded with a satisfactory explanation is a matter for the court's discretion. *Rios v. Shafer (In re Shafer)*, 2010 WL 1286427, at *6–7 (Bankr. D.N.J. Mar. 31, 2010) (Burns, J.); *PNC Bank v. Buzzelli (In re Buzzelli)*, 246 B.R. 75, 117 (Bankr. W.D. Pa. 2000)). However, "[a]lthough the explanation need not be far-reaching and comprehensive, it must consist of more than a 'vague, indefinite, and uncorroborated hodgepodge of financial transactions.'" *DeAngelis v. Young (In re Young)*, 2010 WL 4777626, at *6 (Bankr. D.N.J. Nov. 15, 2010) (Lyons, J.); *In re Carter*, *supra*, 236 B.R. at 180; *see also Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 619 (11th Cir. 1984); *First Tex. Sav. Ass'n, Inc. v. Reed (In re Reed)*, 700 F.2d 986, 993 (5th Cir. 1983). "Courts ultimately must focus on the truth, detail, and

completeness of the debtor's explanation." 2010 WL 4777626, at *6. "[T]he explanation must

be believable but need not be meritorious . . . . [T]he court's focus should be on the

satisfactoriness of the debtor's explanation[,] not on the wisdom of the debtor's dissipation of the

assets." *In re Robbins, supra,* 2008 WL 2038833, at *4.

Courts have denied discharge under § 727(a)(5) to debtors who fail to satisfactorily

explain the loss of cash assets. *See Stapleton v. Yanni (In re Yanni), supra,* 354 B.R. 708, 717-

720 (Bankr. E.D. Pa. 2006) (denying discharge to a debtor who failed to explain cash

expenditures totaling $47,259.65 from multiple accounts and who "consistently testified that he

just did not remember what happened to the money").

Likewise, courts have refused to allow debtors to defer an explanation until trial when the

disposition of their assets has been placed in issue at summary judgment. *See Sonders v.

Mezvinsky (In re Mezvinsky),* 265 B.R. 681, 693-94 (Bankr. E.D. Pa. 2001) (Weiss Sigmund, J.)

(denying discharge to a debtor on a summary judgment motion brought by the plaintiff). In that

case, the court held:

> [O]nce the plaintiff has made out a *prima facie* case, as the Movants have
> here, the Debtor must come forward with a satisfactory explanation as to
> why her personal property is now worth only a fraction of its value four
> years before the Petition Date. Rule 56(e), and Bankruptcy Rule 7056 by
> incorporation, demand that the Debtor "must, by affidavit or as otherwise
> provided in this rule," set forth facts showing an issue for trial. Holding
> back evidence until trial is not an option where the moving party has met its
> burden under Rule 56. The Debtor has not provided any affidavit or
> deposition testimony from either the appraisers or her husband which might
> raise an issue of fact that different valuation methodologies will provide
> satisfactory valuation. She cannot demand trial on mere speculation that a
> material issue of fact may emerge at that time.

*Id.* (internal citations omitted).

Courts have found for debtors under § 727(a)(5) when they provide plausible

explanations of where lost assets were spent or how they were dissipated. *See In re Shafer,*

24

*supra*, 2010 WL 1286427, at *8 (Burns, J.) ("When questioned, the [d]ebtor explained how and why each transaction occurred. When he knew, the [d]ebtor explained where the money went from each transfer and asserted that most of the money went to pay off mortgages that existed on each property. For the Sedgefield Property, the [d]ebtor specifically identified that proceeds from that transfer were intended for his children's education. The [c]ourt finds the [d]ebtor has satisfactorily explained how the transfers occurred and that his explanations are sufficient to withstand denial of discharge pursuant to § 727(a)(5)").

    1. <u>The Corvette Trade-In</u>

Here, the Court finds Plaintiff has met his initial burden of identifying a specific asset that was formerly the debtor's property but which has since been lost—the difference in value between the Corvette and the Infiniti. The Debtor seeks to provide an explanation by stating the trade-in was an even trade for $30,000 and did not result in added value to his benefit. Debtor has identified his father as the title owner and has explained he obtained both cars for his father's use. In fact, the documentation submitted by Debtor through Ms. Bezner includes the receipt for the 2004 purchase of the Corvette. The name of the customer, as stated on that receipt, is George Grammenos, residing at the same address as Debtor. Based on this record, a genuine dispute of material fact exists for trial as to the facts surrounding this transaction.

    2. <u>The Unexplained Deposits and Withdrawals</u>

With regard to the deposits and withdrawals, Plaintiff has again met his initial burden of identifying a specific, unexplained loss of assets. Plaintiff has submitted into the record extensive bank records, and summaries of those records, which establish that as of August 28, 2007, Debtor had a balance of $224,080.79 in Money Market Savings Account # 3486, and the next

day, on August 29, 2007, Debtor withdrew $220,000 from that account and so, plaintiff urges,

Debtor has since failed to account for the funds' disposition.

The burden now shifts to Debtor to provide a satisfactory explanation for the loss or

deficiency. Debtor has explained that he chose to "work mainly in cash," due to disputes with

Bank of America. Debtor had, prior to the subject withdrawal of over $200,000, kept the vast

majority of his assets in a money market savings account (MMSA). A MMSA is a type of

deposit account offered by banks that allows for a greater return on investment while remaining

fairly liquid and available. It is, however, subject to balance and withdrawal restrictions.

Debtor's explanation of disagreements with the bank over fees and access could be explained by

dissatisfaction with the MMSA, which would have caused him to withdraw the money from the

MMSA:

> On the week of 8/20/07 I was having problems with my Bank of America accounts.
> Bank of American wanted to charge me penalty fee's for spending too much money and
> not having the money mature in its vested time agreement. I then withdrawal the funds
> from my account planning to look into opening with a new bank branch, Instead I held on
> to the money which made it much easier for me to spend. I would frequently use my
> Bank of America credit card. To make payments to the card I would just go to the bank
> personally and give them the funds. This is where 85% of my funds went to.

Grammenos Aff., Aug. 22, 2011, ECF No. 31.

In fact, Debtor stated at the hearing of August 10, 2011 that he was "forced" to withdraw

the funds for failure to abide by the MMSA rules—as supported by his own spreadsheet, Bezner

Cert. ex. at 1, Aug. 17, 2011, ECF No. 26-1, which shows multiple withdrawals from the

MMSA. As MMSA rules generally limit the number of withdrawals that can be made to a very

low number, Debtor's explanation may be plausible.

Plaintiff argues the transfers from accounts labeled "SAV 3" and "CHK 9" to make

payments on Debtor's credit card demonstrates that Debtor's explanation cannot be sufficient to

prevent summary judgment. Further, Plaintiff argues there is no mention of money orders in the August 22, 2011 Affidavit of Mr. Grammenos, while there was mention of them at the Court's August 10, 2011 hearing. At that hearing the Debtor stated he kept cash in his home and took the cash to the Bank of America near his house in order to pay his bills. Indeed, the Debtor's Affidavit is consistent with that statement.

Debtor's explanation for how he spent close to $200,000 in credit card purchases between August 2007 and August 2009 finds some support in his credit card statements, as submitted as D1 at the November 29, 2011 hearing. Debtor spent, *on average*, $10,033.83 each month between August 2007 and February 2009. *See* Bezner Cert. ex. at 1, Aug. 17, 2011, ECF No. 26-1; *see also* Ex. D1, Hearing, Nov. 29, 2011 (listing all credit card statements between April 2006 and July 2009, and supporting the figures in Debtor's statement of expenditures). Debtor further supports his purchase of a car, which was listed on Schedule B of the Petition, and the financing to which the purchase was subject, with the submission of a Vehicle Purchase Order, which lists the sale of a 2008 BMW 328XIC for $44,800.00, with financing of $28,190.00 and cash due at delivery of $20,000.00.

Debtor, while cooperating with requests for documentation, has arguably not provided the ideal response to requests nor has he submitted, for example, a comprehensive and professional accounting of the funds withdrawn from the MMSA. However, the Court notes the Debtor is representing himself *pro se* in this proceeding, and we are mindful of the Supreme Court's holding in *Haines v. Kerner*, 404 U.S. 519 (1972) that a *pro se* litigant's moving papers must be accorded liberal construction. 404 U.S. at 520.

On this record, taking all inferences and facts in favor of the non-moving party, as required when considering a motion for summary judgment, the Court finds genuine disputes of

fact exist to deny the Plaintiff's Motion for Summary Judgment. Denial of discharge is a drastic remedy granted only in extreme cases. The Debtor has sought to explain the disposition of his lost assets so as to preclude denial of discharge as a matter of law under § 727(a)(5). Plaintiff challenges Debtor's explanations. There remain genuine disputes as to material facts which must be resolved at trial. Summary judgment is denied as to Count III.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is DENIED on all Counts.

An order shall be submitted in accordance with this Opinion.

Dated: March 23, 2012

Rosemary Gambardella
United States Bankruptcy Judge